# APPENDIX

# I

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| IN RE ELECTRONIC BOOKS ANTITRUST LITIGATION | No. 11-md-02293 (DLC)<br>ECF Case |

This Document Relates to:

| | |
|---|---|
| THE STATE OF TEXAS, et. al.,<br><br>     Plaintiffs,<br><br>     v.<br><br>HACHETTE BOOK GROUP, INC., et. al.,<br><br>     Defendants. | **DECLARATION OF<br>KATHERINE KINSELLA** |

I, Katherine Kinsella, being duly sworn, hereby declare as follows:

1.  I am President of Kinsella Media, LLC ("KM"), an advertising and legal notification firm in Washington, D.C. specializing in the design and implementation of notification programs to reach unidentified putative class members primarily in consumer and antitrust class actions and claimants in bankruptcy and mass tort litigation. My business address is 2120 L Street, NW, Suite 860, Washington, D.C. 20037. My telephone number is (202) 686-4111.

2.  I submit this declaration at the request of Liaison Counsel for Plaintiff States in connection with *In re Electronic Books Antitrust Litigation.*

3.  This declaration is based upon my personal knowledge and upon information provided by Liaison Counsel for Plaintiff States, my associates, and staff. The information is of a type reasonably relied upon in the fields of advertising, media, and communications.

4.  KM has developed and directed some of the largest and most complex national notification programs in the country. The scope of the firm's work includes notification programs in antitrust, bankruptcy, consumer fraud, mass tort and product liability litigation. Specific

cases have involved, among others, asbestos, breast implants, home siding and roofing products, infant formula, pharmaceuticals, polybutylene plumbing, tobacco, and Holocaust claims. The firm has developed or consulted on over 700 notification programs and has placed over $300 million in media notice. Selected cases are attached as **Exhibit 1**.

5.  Courts have admitted expert testimony from KM on our firm's quantitative and qualitative evaluations of notice programs.  Many Courts have commented favorably, on the record, regarding the effectiveness of notice plans prepared by KM.  Selected judicial comments are attached as **Exhibit 2**.

6.  I have testified as an expert at trial and in a deposition in *Engle v. R. J. Reynolds Tobacco*, No. 94-08273 (Fla. Cir. Ct., Dade County).  I have been deposed as an expert in *In re NASDAQ Market-Makers Antitrust Litigation*, M21-68 RWS), 94-CIV. 3994 (RWS), M.D.L. No. 123 (S.D.N.Y.), *In re Dow Corning*, No. 95-20512 (Bankr. E.D. Mich.), *Georgine v. Amchem, Inc. et al.*, C.A. No. 93-CV-0215 (E.D. Pa.), *In re W. R. Grace & Co.*, Chapter 11, No.01-01139 (JJF) (Bankr. D. Del.) and *Gross v. Chrysler Corp.*, No. 061170 (Md. Cir. Ct., Montgomery County).  I have testified in court in *In re Swan Transportation Company*, Chapter 11, Case No. 01-11690, *Cox v. Shell Oil Co.*, No. 18,844 (Tenn. Ch. Ct., Obion County), *Ahearn v. Fibreboard Corporation*, C.A. No. 6:93cv526 (E.D. Tex.), and *Continental Casualty Co. v. Rudd*, C.A. No. 6:94cv458 (E.D. Tex.).

7.  I am the author of *Reality Check: The State of New Media Options for Class Notice*, published in 2010 in <u>A Practitioner's Guide to Class Actions</u>;[1] the co-author of *Class Action Notice and Claims Administration*, published in December 2010 in <u>The International Handbook on Private Enforcement Of Competition Law</u>;[2] the author of *The Plain Language Tool Kit for Class Action Notice*, published in the October 25, 2002 issue of <u>Class Action Litigation Report</u>;[3] and the author of *Quantifying Notice Results in Class Actions – the Daubert/Kumho Mandate*, published in the July 27, 2001 issue of <u>Class Action Litigation Report</u>[4] and the August 7, 2001 issue of <u>The United States Law Week</u>.[5]  In addition, I am

---

[1]   Published by the Tort Trial & Insurance Practice Section of the American Bar Association.
[2]   Published by Edward Elgar Publishing, Inc.
[3]   Published by The Bureau of National Affairs (BNA).
[4]   *Ibid*. BNA.
[5]   *Ibid*. BNA.

author of *The Ten Commandments of Class Action Notice*, published in the September 24, 1997 issue of the Toxics Law Reporter,[6] and co-author of *How Viable Is the Internet for Class Action Notice*, published in the March 25, 2005 issue of Class Action Litigation Report[7].

8. KM, Rust Consulting, Inc. and the State Attorneys General worked together to design a Notice Program that comports with due process and effective notification standards.   It includes direct notice, paid media, and earned media notice.

## Overview

9. The objective of the Notice Program is to provide adequate notice of the Settlements to individuals who:

> (1) Purchased an E-book published by Hachette, HarperCollins, Simon & Schuster, Penguin, or Macmillan (as well as all other names under which these publishers also publish E-books) from April 1, 2010 through May 21, 2012; and

> (2) Were a resident of 1) a state other than Minnesota, 2) the District of Columbia, or 3) one of the five U.S. Territories and Commonwealths at the time of purchase.

10. In developing the Notice Program, it was determined that it would be most practicable to implement an individual notification effort to reach consumers included in the Settlement ("Eligible Consumers") through available email addresses ("Direct Notice").   Direct Notice will be delivered as a courtesy by E-book retailers, including Amazon, Barnes & Noble, Apple, Kobo, Sony, and Google ("Retailers").

11. The Attorneys General informed me, based on their discovery in this case and information provided by the Retailers, that the Retailers account for 99% share of the E-books market.

12. The Retailers have informed the Attorneys General that it is not possible to individually identify which emails are returned as undeliverable.   However, the Retailers did report that based on other electronic mailings to a substantially similar list, the undeliverable rate is expected to be less than 5% for a total reach of 95% of Eligible Consumers.   KM will utilize Paid Media to supplement the comprehensive Direct Notice to Eligible Consumers.

---

[6]     *Ibid.* BNA.
[7]     *Ibid.* BNA.

13. Coverage and exposure will be further enhanced with an Earned Media Program and a dedicated informational website.

## Direct Notice

14. Direct Notice will consist of the following:

  (a) Emails from Retailers as follows:

  (i) An initial email to inform Eligible Consumers of their rights and how they may participate in the Settlements. The email will inform Eligible Consumers whether they are eligible for an automatic payment by credit or check, or have to file a Claim Form in order to receive a Check

  (ii) An email informing Eligible Consumers to inform them that the Court has granted final approval of the Settlements and that their automatic credit or check has been issued, or that they can file a Claim Form to receive a check.

  (iii) A reminder email to Eligible Consumers to inform them that their credit or check will expire in 90 days.

  (b) Notice by request as follows:

  (i) The Detailed Notice will be mailed to those who request it by calling, writing, or emailing the Settlement Administrator.

  (ii) The Detailed Notice will be available for download in PDF format from the Settlement Website.

15. The Retailer Emails and the Detailed Notice are attached to the Notice Plan as Exhibits A and B respectively.

16. Additional details of the Direct Notice Plan can be found in the declaration of Kim Schmidt of Rust Consulting Inc.

## Paid Media

17. The Paid Media program includes advertising in local newspapers in U.S. Territories and Commonwealths, several Internet networks and mobile advertising networks to reach the target audience.

18. Internet advertising will include the following placements for approximately 30 days:

    (a) Banner advertisements measuring 728 x 90, 160 x 600, and 300 x 250 pixels will appear, on a rotating basis, on websites that are part of the 24/7 Real Media Network, for a total estimated 10,000,000 gross impressions.[8]

    (b) Banner and text advertisements measuring 110 x 80 pixels will appear, on a rotating basis, on Facebook for a total estimated 10,000,000 gross impressions.

    (c) Banner advertisements measuring 728 x 90 pixels and 300 x 250 pixels will appear, on a rotating basis, on websites that are part of the Glam Media Network, for a total estimated 2,000,000 gross impressions.

    (d) Banner advertisements will appear using contextual targeting, on a rotating basis, on literature and book blogs that are part of the Google Display Network for an as-yet-undetermined amount of impressions.

    (e) Banner advertisements measuring 728 x 90, 300 x 250, and 160 x600 pixels will appear, on a rotating basis, on websites that are part of the Quadrant ONE Network, for a total estimated 5,500,000 gross impressions.

19. Mobile and tablet advertising will include the following for approximately 30 days:

    (a) Banner advertisements will appear, on a rotating basis, on websites that are part of the JumpTap Network for a total estimated 1,500,000 gross impressions.

    (b) Banner advertisements will appear, on a rotating basis, on websites that are part of the Millennial Media Network for a total estimated 2,000,000 gross impressions.

20. RSS feed advertising will include the following placements for approximately 30 days:

    (a) Banner advertisements measuring 728 x 90, 160 x 60, 300 x 250, and 468 x 60 pixels will appear, on a rotating basis, on websites that are part of the RSS Feeds on the Pheedo Network for an as-yet-undetermined amount of impressions.

21. The Banner Ad is attached as Exhibit C to the Notice Plan.

---

[8] Gross Impressions are the total number of times a media vehicle containing the notice is seen. This is a duplicated figure, as some viewers will see several media vehicles that contain the notice.

22. The Publication Notice will appear in local newspapers in U.S. Territories and Commonwealths, translated into Spanish when necessary, as follows:

    (a) A quarter-page ad (10.87" x 6") one time in *El Nuevo Dia* with an estimated circulation of 250,000.

    (b) A quarter-page ad (6.5" x 9") one time in *El Vocero* with an estimated circulation of 140,000.

    (c) A quarter-page ad (5.83" x 10") one time in *Pacific Daily News* with an estimated circulation of 30,000.

    (d) A quarter-page ad (10.87" x 6") one time in *Primera Hora* with an estimated circulation of 140,869.

    (e) A quarter-page ad (4.896" x 12") one time in *Puerto Rico Daily Sun* with an estimated circulation of 30,000.

    (f) A quarter-page ad (7.25" x 10.25") one time in *Saipan Tribune* with an estimated circulation of 2,500.

    (g) A quarter-page ad (6" x 10") one time in *Samoa News* with an estimated circulation of 4,000.

    (h) A quarter-page ad (6" x 10") one time in *St. Croix Avis* with an estimated circulation of 14,000.

    (i) A quarter-page ad (10.25" x 6") one time in *St. Johns Trade Winds* with an estimated circulation of 2,000.

    (j) A quarter-page ad (6.08" x 9") one time in *Virgin Island Daily News* with an estimated circulation of 13,000.

23. The Publication Notice is attached as Exhibit D to the Notice Plan.

### Earned and Social Media Outreach

24. Efforts to generate additional media coverage of the Settlements ("Earned Media Program") and discussion of the Settlements on social media ("Social Media Program") will be implemented in order to amplify the Paid Media Program and provide additional notice to Eligible Consumers.

25. The Earned Media Program will feature:

    (a) <u>Press Release</u>: National press release distribution on PR Newswire's Full National Circuit, reaching approximately 5,500 media outlets and 5,400 websites. The press release will highlight the toll-free telephone number and Settlement website address so that Eligible Consumers can obtain complete information.

    (b) <u>Blog Outreach</u>: Outreach will be made to over 300 blog outlets that cover topics related to books, book reviews, authors, writers, etc. Blogs were selected based on relevance, unique visits per month, and influence rank.

26. The Social Media Program will feature:

    (a) <u>Social Post</u>: A SocialPost[TM] will be included as part of the press release. The SocialPost[TM] will utilize both general and industry specific Tweeter accounts to attract additional audiences and online searchers to the notice.

    (b) <u>Promoted Stories</u>: The press release would be further distributed to the target audience wherever they are interacting with relevant content, including RSS feeds, websites, tablets, and mobile devices.

### Plain Language

27. All Notice Materials are written in plain, easily understood language. The Retailer Notices, Detailed Notice, and Publication Notice include a bold headline to quickly inform readers whether they are included, provide an overview of the Settlements, and summarize Eligible Consumers' rights and options in simple and clear terms. The Banner Ad uses a similar headline and directs consumers to the Settlement Website for more information.

### Settlement Website

28. A website will be established at www.EBooksAGSettlements.com to enable potential Eligible Consumers to get information on the Proposed Settlements. Additionally, KM will contract with Google AdWords, Yahoo! Search Marketing, and Bing Microsoft Advertising to have sponsored links appear on the results page of keyword/phrase searches on the Google, AOL, Ask, Bing, MSN and Yahoo! search engine pages.

### Conclusion

29. It is my opinion that the reach of our target audiences and the number of exposure opportunities to the notice information provides reasonable supplemental notice in support of the Direct Notice to 95% of Eligible Class Members. The overall reach of the Notice Program is extremely high and exceeds the reach achieved in most consumer cases.

I declare under penalty of perjury that the foregoing is true and correct.


_Katherine Kinsella_

August 29, 2012

—————————————————————          ———————————————————

Katherine Kinsella                                          Date

EXHIBIT 1



# Selected Cases

## Antitrust

*Big Valley Milling, Inc. v. Archer Daniels Midland Co.,* No. 65-C2-96-000215 (Minn. Dist. Ct. Renville County) (lysine).

*Carlson v. Abbott Laboratories,* No. 94-CV-002608 (Wis. Cir. Ct. Milwaukee County) (infant formula).

*Comes v. Microsoft Corp.,* No. CL8231 (Iowa Dist. Ct. Polk County)

*Connecticut v. Mylan Laboratories, Inc.,* No. 99-276, MDL No. 1290 (D.D.C.) (pharmaceutical).

*Conroy v. 3M Corp.,* No. C-00-2810 CW (N.D. Cal.) (invisible tape).

*Copper Antitrust Litigation,* MDL 1303 (W.D. Wis.) (physical copper).

*Cox v. Microsoft Corp.,* No. 105193/00 (N.Y. Sup. Ct. N.Y. County) (software).

*D.C. 37 Health & Security Plan v. Medi-Span,* No. 07-cv-10988 (D.Mass.); *New England Carpenters Health Benefits Fund v. First DataBank, Inc.,* No. 1:05-CV-11148 (D. Mass.) (pharmaceutical).

*Giral v. Hoffman-LaRoche Ltd.,* C.A. No. 98 CA 7467 (W. Va. Cir. Ct., Kanawha County) (vitamins).

*In re Buspirone Antitrust Litigation,* MDL No. 1413 (S.D.N.Y.) (pharmaceutical).

*In re Cardizem Antitrust Litigation,* 200 F.R.D. 326 (E.D. Mich.) (pharmaceutical).

*In re Compact Disc Minimum Price Antitrust Litigation,* MDL No. 1361 (D. Me.) (compact discs).

*In re Insurance Brokerage Antitrust Litig.,* MDL No. 1663 Civil No. 04-5184 (FSH) (D.N.J.) (insurance).

*In re International Air Transportation Surcharge Antitrust Litigation,* No. M 06-1793, MDL No. 1793 (N.D. Cal.) (airline fuel surcharges).

*In re Monosodium Glutamate Antitrust Litig.,* D-0202-CV-0200306168, D-202-CV-200306168 (N.M. Dist. Ct., Bernalillo County) (MSG).

*In re Motorsports Merchandise Antitrust Litigation,* No. 1:97-CV-2314-TWT (N.D. Ga.) (merchandise).

*In re Nasdaq Market-Makers Antitrust Litigation*, MDL No. 1023 (S.D.N.Y.) (securities).

*In re Pharmaceutical Industry Average Wholesale Price Litigation*, No. CA:01-CV-12257, MDL No. 1456 (D. Mass.) (pharmaceutical).

*In re Toys "R" Us Antitrust Litigation*, No. CV-97-5750, MDL No. 1211, (E.D.N.Y.) (toys and other products).

*In re Western States Wholesale Natural Gas Antitrust Litigation*, No. CV-03-1431, MDL No. 1566, (D. Nev) (natural gas).

*Kelley Supply, Inc. v. Eastman Chemical Co.*, No. 99CV001528 (Wis. Cir. Ct., Dane County) (Sorbates).

*Ohio vs. Bristol-Myers Squibb, Co.*, No. 1:02-cv-01080 (D.D.C.) (pharmaceutical).

*Raz v. Archer Daniels Midland Co.*, Inc., No. 96-CV-009729 (Wis. Cir. Ct. Milwaukee County) (citric acid).

## Consumer and Product Liability

*Azizian v. Federated Department Stores, Inc.*, No. 4:03 CV-03359 (N.D. Cal.) (cosmetics).

*Baird v. Thomson Consumer Elecs.*, No. 00-L-000761 (Ill. Cir. Ct., Madison County) (television).

*Bonilla v. Trebol Motors Corp.*, No. 92-1795 (D.P.R.) (automobiles).

*Burch v. American Home Products Corp.*, No. 97-C-204 (1-11) (W. Va. Cir. Ct., Brooke County) (Fen Phen).

*Cosby v. Masonite Corp., No.* CV-97-3408 (Ala. Cir. Ct. Mobile County) (siding product); *Quin v. Masonite Corp.*, No. CV-97-3313 (Ala. Cir. Ct. Mobile County) (roofing product).

*Cox v. Shell Oil Co.*, No. 18,844 (Tenn. Ch. Ct. Obion County) (polybutylene pipe).

*Daniel v. AON Corp.*, No. 99 CH 11893 (Ill. Cir. Ct. Cook County) (insurance).

*Fettke v. McDonald's Corp.*, No. 044109 (Cal. Super Ct. Marin County) (trans fatty acids).

*Florida v. Nine West Group, Inc.*, No. 00 CIV 1707 (S.D.N.Y.) (shoes).

*Foothill/De Anza Community College Dist. v. Northwest Pipe Co.*, No. 00-20749-JF(N.D. Cal.) (fire sprinklers).



*Galanti v. The Goodyear Tire & Rubber Company,* No. 03-209 (D.N.J.) (radiant heating) (2002).

*Garza v. Sporting Goods Properties, Inc.,* No. SA 93-CA-1082 (W.D. Tex.) (gun ammunition).

*Hoorman v. GlaxoSmithKline,* No. 04-L-715 (Ill. Cir. Ct., Madison Cty.) (Paxil pharmaceutical*).*

*In re Louisiana Pacific Corp. Inner Seal OSB Trade Practices Litigation,* MDL No. 1114 (N.D. Cal.) (oriented strand board).

*In re Tri-State Crematory Litig,* MDL 1467 (N.D. Ga.) (improper burial).

*Lebrilla v. Farmers Group Inc.,* No. 00-CC-07185 (Cal. Super. Ct., Orange County) (auto insurance).

*Lovelis v. Titflex,* No. 04-211 (Ak. Cir. Ct., Clark County) (gas transmission pipe).

*Naef v. Masonite Corp.,* No. CV-94-4033 (Ala. Cir. Ct. Mobile County) (hardboard siding product).

*Peterson v. BASF Corp.,* No. C2-97-295 (D. Minn.) (herbicide).

*Posey v. Dryvit Sys., Inc.* No. 17,715-IV (Tenn. Cir. Ct., Jefferson County) (EIFS stucco).

*Reiff v. Epson America, Inc. and Latham v. Epson Am., Inc.,* J.C.C.P. No. 4347 (Cal. Super. Ct., L.A. County) (ink jet printers).

*Richison v. Weyerhaeuser Company Limited,* No. 05532 (Cal. Super. Ct. San Joaquin County) (roofing product).

*Ruff v. Parex, Inc.,* No. 96-CvS 0059 (N.C. Super. Ct. Hanover County) (synthetic stucco product).

*Shah v. Re-Con Building Products, Inc.,* No. C99-02919 (Cal. Super. Ct. Contra Costa County) (roofing product).

*Shields vs. Bridgestone/Firestone, Inc., Bridgestone Corp.,* No. E-167.637 (D. Tex.) (tires).

*Smith v. Behr Process Corp.,* No. 98-2-00635 (Wash. Super. Ct., Gray Harbor County) (stain product).

*Weiner v. Cal-Shake, Inc.,* J.C.C.P. No. 4208 (Cal. Super. Ct., Contra Costa County) (roofing product).

*Wholesale Elec. Antitrust Cases I & II,* J.C.C.P. Nos. 4204 & 4205 (Cal. Super. Ct., San Diego County) (energy).



*Woosley v. State of California,* No. CA 000499 (Cal. Super. Ct., Los Angeles County) (automobiles).

## Mass Tort

*Ahearn v. Fibreboard Corp.,* No. 6:93cv526 (E.D. Tex); *Continental Casualty Co. v. Rudd,* No. 6:94cv458 (E.D. Tex) (asbestos injury).

*Backstrom v. The Methodist Hospital,* No. H.-94-1877 (S.D. Tex.) (TMJ injury).

*Engle v. RJ Reynolds Tobacco Co.,* No. 94-08273 (Fla. Cir. Ct. Dade County) (tobacco injury).

*Georgine v. Amchem, Inc.,* No. 93-CV-0215 (E.D. Pa.) (asbestos injury).

## Bankruptcies

*In re Armstrong World Industries, Inc.,* No. 00-4471 (Bankr. D. Del.).

*In re Dow Corning,* No. 95-20512 (Bankr. E.D. Mich.) (breast implants).

*In re Johns-Manville Corp.,* 68 B.R. 618, 626 (Bankr. S.D.N.Y.) (asbestos).

*In re Kaiser Aluminum Corp.,* No. 02-10429 (JFK) (D. Del).

*In re Owens Corning,* No. 00-03837 (Bankr. D. Del.).

*In re Raytech Corp.,* No. 5-89-00293 (Bankr. D. Conn.) (asbestos).

*In re The Celotex Corp.,* Nos. 90-10016-8B1 and 90-10017-8B1 (Bankr. M.D. Fla.) (asbestos).

*In re U.S. Brass Corp.,* No.94-40823S (Bankr. E.D. Tex.) (polybutylene).

*In re USG Corp.,* Nos. 01-2094 - 01-2104 (Bankr. D. Del.).

*In re W.R. Grace & Co.,* No. 01-01139 (Bankr. D. Del.).

## Insurance

*McNeil v. American General Life and Accident Insurance Co.,* No. 8-99-1157 (M.D. Tenn.).

*Nealy v. Woodmen of the World Life Insurance Co.,* No. 3:93 CV-536 (S.D. Miss.).



## Holocaust Victims Reparations

*In re Holocaust Victim Assets Litigation,* Nos. CV 96-4849, CV-5161 and CV 97-461 (E.D.N.Y.) (Holocaust).

The International Commission on Holocaust Era Insurance Claims Outreach.

## Pension Benefits

*Collins v. Pension Benefit Guarantee Corp.,* No. 88-3406 (D.D.C.); Page v. Pension Benefit Guarantee Corp., No. 89-2997 (D.D.C.).

*Forbush v. J. C. Penney Co., Inc.,* Nos. 3:90-2719 and 3:92-0109 (N.D. Tex.).

## International

*Ahearn v. Fiberboard Corporation,* No. 6:93cv526 (E.D. Tex) and *Continental Casualty Co. v. Rudd,* No. 6:94cv458 (E.D. Tex.) (asbestos injury) (1993).

*Galanti v. The Goodyear Tire & Rubber Company,* No. 03-209 (D.N.J.) (radiant heating) (2002).

*In re Holocaust Victims Assets Litigation,* No. CV 96-4849 (ERK) (MDG) (Consolidated with CV-5161 and CV 97461) (E.D.N.Y.) (2003).

*In re Owens Corning, Chapter 11,* No. 00-03837 (MFW) (Bankr. D. Del.) (2006).

*In re The Celotex Corporation, Chapter 11,* Nos. 90-10016-8B1 and 90-10017-8B1 (Bankr. M.D. Fla.) (1996).

*In re USG Corporation, Chapter 11,* Nos. 01-2094 (RJN) through 01-2104(RJN) (Bankr. D. Del.) (2006).

*In re Western Union Money Transfer Litigation,* No. 01 0335 (CPS) (VVP) (E.D.N.Y.) (wire transactions) (2004).

*In re W.R. Grace & Co., Chapter 11,* No. 01-01139 (Bankr. D. Del.) (bankruptcy) (2001).

International Committee on Holocaust Era Insurance Claims (1999).

## Product Recall

Central Sprinkler Voluntary Omega Sprinkler Replacement Program.



*Hart v. Central Sprinkler Corp.,* No. BC17627 (Cal. Super. Ct. Los Angeles County) & *County of Santa Clara v. Central Sprinkler Corp., No.* CV 17710119 (Cal. Super. Ct. Santa Clara County).

## Telecom

*Bidner, et al. v. LCI International Telecom Corp d/b/a Qwest Communications.*

*Community Health Association v. Lucent Technologies, Inc.,* No. 99-C-237, (W.Va. Cir. Ct., Kanawha County).

*Cundiff et al. v. Verizon California, Inc.,* No. 237806 (Cal. Super Ct., Los Angeles County).

*Kushner v. AT&T Corporation,* No. GIC 795315 (Cal. Super. Ct., San Diego County).

*Rish Enterprise v. Verizon New Jersey,* No. MID-L-8946-02 (N.J. Super. Ct.).

*Sonnier, et. al. v. Radiofone, Inc.,* No. 44-844, (L.A. Jud. Dist. Ct., Plaqueimes Parish County).

*State of Louisiana v. Sprint Communications Company L.P.,* No. 26,334 (Jud. Dis. Ct., Parish of West Baton Rouge) and *State of Louisiana v. WilTel, Inc.,* No. 26,304 (Jud. Dis. Ct., Parish of West Baton Rouge).

EXHIBIT 2



# Judicial Comments

*Ahearn v. Fibreboard Corp.*, No. 6:93 cv526 (E.D. Tex.); *Continental Casualty Co. v. Rudd*, No. 6:94cv458 (E.D. Tex.).

In approving the notice plan for implementation in the Ahearn and Rudd class actions in 1994, Judge Parker stated, "I have reviewed the plan of dissemination, and I have compared them to my knowledge at least of similar cases, the notices that Judge Weinstein has worked with [Agent Orange] and Judge Pointer [Silicon Gel Breast Implants], and it appears to be clearly superior." - Chief Judge Robert M. Parker (1994)

*Azizian v. Federated Department Stores, Inc.*, No. 3:03 CV-03359 (N.D. Cal.).

"The notice was reasonable and the best notice practicable under the circumstances; was due, adequate and sufficient notice to all class members; and complied fully with the laws of the United States and of the Federal Rules for Civil Procedure, due process and any other applicable rules of court." - Hon. Sandra Brown Armstrong (2004)

*Collins v. Pension Benefit Guarantee Corp.*, No. 88-3406 (D.D.C.).

"The notice provided was the best notice practicable under the circumstances. Indeed, the record shows that the notice given was consistent with the highest standards of compliance with Rule 23(e)." (1996)

*Cox v. Microsoft Corporation*, No. 105193/00 (N.Y. Sup. Ct. N.Y. County).

"The court finds that the combination of individual mailing, e-mail, website and publication notice in this action is the most effective and best notice practicable under all the circumstances, constitutes due, adequate and reasonable notice to all Class members and otherwise satisfies the requirements of CPLR 904, 908 and other applicable rules. The Settlement meets the due process requirement for class actions by providing Class members an opportunity either to be heard and participate in the litigation or to remove themselves from the Class." - Hon. Karla Moskowitz (2006)

*Cox v. Shell Oil Co.*, No. 95-CV-2 (Tenn. Ch. Ct. Obion County)

In the order approving the settlement of the polybutylene pipe class action, Judge Maloan stated, "The Court finds the notice program is excellent. As specified in the findings below, the evidence supports the conclusion that the notice program is one of the most comprehensive class notice campaigns ever undertaken." (1995)

*Foothill/De Anza Community College District v. Northwest Pipe Co.,* No. CV-00-20749 (N.D. Cal.)

"The Court finds that the settling parties undertook a thorough and extensive notice campaign designed by Kinsella/Novak Communications, Ltd., a nationally-recognized expert in this specialized field. The Court finds and concludes that the Notice Program as designed and implemented provides the best practicable notice to the Class, and satisfied requirements of due process." - Hon. Jeremy Fogel (2004)

*Galanti v. The Goodyear Tire & Rubber Co.,* No. 03-209 (D.N.J.)

"The published notice, direct notice and Internet posting constituted the best practicable notice of the Fairness Hearing, the proposed Amended Agreement, Class Counsels' application for fees, expenses and costs, and other matters set forth in the Class Notice and the Summary Notice. The notice constituted valid, due and sufficient notice to all members of the Settlement Classes, and complied fully with the requirements of Rule 23 of the Federal Rules of Civil Procedure, the Constitution of the United States, the laws of New Jersey and any other applicable law." – Hon. Stanley R. Chesler (2004)

*Georgine v. Amchem,* 158 F.R.D. 314, 326 (E.D. Pa.).

Judge Reed explained that the notice program developed by Kinsella "goes beyond that provided in [previous cases]" and "the efforts here are more than adequate to meet the requirements of Rule 23(c)(2)." (1993)

*Higgins v. Archer-Daniels Midland Co.,* Second Judicial District Court, County of Bernalillo C-202-CV-200306168 (N.M. 2d Jud. Dist. Bernalillo County)

"The Court finds that the form and method of notice given to the Settlement Class, including both mailed notice to persons and firms for whom such notice was practical and extensive notice by publication through multiple national and specialized publications, complied with the requirements of Rule 1-023 NMRA 2006, satisfied the requirements of due process, was the best notice practicable under the circumstances, and constituted due and sufficient notice of the Settlement Agreements and their Final Approval Hearing, and other matters referred to in the Notice. The notice given to the Settlement Class was reasonably calculated under the circumstances to inform them of the pendency of the actions involved in this case, of all material elements of the proposed Settlements, and of their opportunity to exclude themselves from, object to, or comment on the Settlements and to appear at the Final Approval Hearing." -Hon. William F. Lang (2006)



*In re Compact Disc Minimum Advertised Price Antitrust Litigation*, MDL No. 1361 (D. Me.).

In approving the notice plan for implementation in the Compact Disc Minimum Advertised Price Antitrust Litigation, Judge D. Brock Hornby stated, "(the plan) provided the best practicable notice under the circumstances and complied with the requirements of both 15 U.S.C. 15c(b) (1) . . . the notice distribution was excellently designed, reasonably calculated to reach potential class members, and ultimately highly successful in doing so." - Hon. D. Brock Hornby  (2002/2003)

*In re International Air Transportation Surcharge Antitrust Litigation*, No. M 06-1793, MDL No. 1793 (N.D. Cal.).

In approving the notice plan in this litigation that involved a proposed settlement of more than $200 million for U.S. and U.K. class members, U.S. District Judge Charles Breyer repeatedly praised KNC: "I think the notice is remarkable in this case. . . . This is brilliant.  This is the best notice I've seen since I've been on the bench. . . . Turning back to the settlement, again I want to applaud the parties for the notice.  I mean it's amazing.  You know, it really is good.  And I don't know where this person practices, I don't even know that she's a lawyer.  But she really did a good job on this announcement, this notice.  So thank you very much. . . . And I once again want to express my sincere appreciation of the notice.  I mean, I was just extraordinarily impressed. Extraordinarily impressed." – Hon. Charles Breyer  (2008)

*In re The Celotex Corporation,* Nos. 90-10016-8B1 and 90-10017-8B1 (Bankr. M.D. Fla.).

"...all counsel should be complimented on the fact that they have gone to every possible conceivable method of giving notice from putting it on TV and advertising it in papers..... the record should also reflect the Court's appreciation to Ms. Kinsella for all the work she's done, not only in pure noticing, but ensuring that what noticing we did was done correctly and professionally." - Hon. Thomas E. Baynes, Jr.

*In re Western States Wholesale Natural Gas Antitrust Litigation*, No. CV-03-1431, MDL No. 1566, (D. Nev) (natural gas).

"This notice program fully complied with Federal Rule of Civil Procedure 23 and the requirements of due process.  It provided to the MDL Class the best notice practicable under the circumstances." - Hon. Philip M. Pro (2007)

*Johns-Manville Corp.*  68 B.R. 618, 626 (Bankr. S.D.N.Y. 1986), aff'd, 78 B.R. 407 (S.D.N.Y. 1987), aff'd sub nom. *Kane v. Johns-Manville Corp.*  843 F.2d. 636 (2d Cir. 1988).

In approving the notification plan in the Johns-Manville Bankruptcy Reorganization, the court referred to it as "an extensive campaign designed to provide the maximum amount of publicity ... that was reasonable to expect of man and media." - Hon. Burton Lifland  (1996/1998)



*Lovelis v. Titeflex Corp.,* No. CIV-2004-211 (Ark. 9th Cir. Ct. Clark Co.)

"Accordingly, the Notice as disseminated is finally approved as fair, reasonable, and adequate notice under the circumstances. The Court finds and concludes that due and adequate notice of the pendency of this Action, the Stipulation, and the Final Settlement Hearing has been provided to members of the Settlement Class, and the Court further finds and concludes that the Notice campaign described in the Preliminary Approval Order and completed by the Parties complied fully with the requirements of Arkansas Rule of Civil Procedure 23 and the requirements of due process under the Arkansas and United States Constitutions. The Court further finds that the Notice campaign undertaken concisely and clearly states in plain, easily understood language:

(a) The nature of the action;

(b) The definition of the class certified;

(c) The class claims, issues or defenses;

(d) That a Class Member may enter an appearance and participate in person or through counsel if the member so desires;

(e) That the Court will exclude from the class any member who requests exclusion, stating when and how members may elect to be excluded; and

(f) The binding effect of the Final Order and Judgment on Class Members.

- Hon. John A. Thomas

*Naef v. Masonite Corp.,* No. CV-94-4033 (Ala. Cir. Ct. Mobile County)

"In November, 1997, the Court approved a massive Notice Program to apprise class members of the class action Settlement, including the individually mailed, notices, publication notice and notification by way of other avenues nationally and locally. This Notice Program was designed by recognized experts, approved by the mediator and the Court, and implemented diligently by the parties, at defendants' cost. It provided the best notice practicable to the Class, comports with due process, and was clearly adequate under Alabama Rule of Civil Procedure 23(e), the United States Constitution, and other applicable law." - Hon. Robert G. Kendall (1997)

